# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| DELMAR H. LEATHERMON, *et al.*, | Cause No. 4:07-CV-0137-SEB-WGH |
| Plaintiffs, | |
| vs. | HON. SARAH EVANS BARKER |
| GRANDVIEW MEMORIAL GARDENS, INC., *et al.*, | |
| Defendants. | |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................1

II.    SETTLEMENT NEGOTIATIONS ................................................3

III.   THE PROPOSED SETTLEMENT ............................................16

IV.    PLAN FOR CLASS NOTICE....................................................18

V.     THE SETTLEMENT OF THIS ACTION IS IN THE BEST
       INTEREST OF THE CLASS AND SHOULD BE PRELIMINARILY
       APPROVED ..............................................................................20

       A.  The Settlement Agreement Is the Product of Arms-Length, Non-
           Collusive Negotiations. .....................................................24

       B.  The Settlement Is Likely to Obtain Final Approval as Being Fair,
           Adequate, and Reasonable. ................................................25

       C.  The Settlement Does Not Improperly Grant Preferential Treatment
           to the Class Representatives and Provides for a Fair Allocation of
           Relief to All Class Members. .............................................26

VI.    THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY
       CERTIFIED ...............................................................................27

       A.  Numerosity. ........................................................................29

       B.  Commonality.......................................................................30

       C.  Typicality. ..........................................................................31

       D.  Adequacy............................................................................31

       E.  The Action Meets the Requirements of Rule 23(b)(3). ...........32

VII.   THE PROPOSED FORM AND METHOD OF NOTICE IS THE
       BEST NOTICE PRACTICABLE AND SHOULD BE APPROVED..........35

VIII.  THE COURT SHOULD SET A SCHEDULE FOR FINAL
       APPROVAL ..............................................................................37

i

IX.    CONCLUSION.............................................................................................38

**CERTIFICATE OF SERVICE** ...........................................................................**40**

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Air Line Stewards & Stewardesses Ass'n v. Trans World Airlines, Inc.*
    630 F.2d 1164 (7th Cir. 1980) ...................................................................21

*Allapattah Servs. v. Exxon Corp.*
    333 F.3d 1248 (11th Cir. 2003) ...............................................................33

*Amchem Prods. Inc. v. Windsor*
    521 U.S. 591 (1997)...................................................................................28

*Armstrong v. Bd. of Sch. Dirs. Of Milwaukee*
    616 F.2d 305 (7th Cir.1980) ................................................................ 1, 21

*Best Foods v. Aerojet-General Corp.*
    2000 WL 1238910 (W.D. Mich. Aug. 24, 2000) .........................................24

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975) .......................................................................33

*Bovee v. Coopers & Lybrand*
    216 F.R.D. 596 (S.D. Ohio 2003)................................................................30

*Butler v. Am. Cable & Tel., LLC*
    2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) .......................................... 20, 24

*Cross v. National Trust Life, Ins.*
    553 F.2d 1026 (6th Cir. 1977) .....................................................................32

*Daffin v. Ford Motor Co.*
    458 F.3d 549 (6th Cir. 2006) ........................................................ 29, 30, 31

*Eisen v. Carlisle and Jacquelin*
    417 U.S. 156 (1974)....................................................................................37

*Felzen v. Andreas*
    134 F.3d 873 (7th Cir. 1998) .......................................................................21

*Fidel v. Farley*
    534 F.3d 508 (6th Cir. 2008) ..........................................................................35

*Franks v. Kroger Co.*
    649 F.2d 1216 (6th Cir. 1981) ......................................................................21

*Gautreaux v. Pierce*
    690 F.2d 616 (7th Cir. 1982) ........................................................................22

*Hadix v. Johnson*
    322 F.3d 895 (6th Cir. 2003) ........................................................................27

*In re American Medical Systems, Inc.*
    75 F.3d 1069 (6th Cir. 1996) ....................................................... 29, 31, 32, 33

*In re Bromine Antitrust Litig.*
    203 F.R.D. 403 (S.D. Ind. 2001) ..................................................................23

*In re Cardizem CD Antitrust Litg.*
    218 F.R.D. 508 (E.D. Mich. 2003) ...............................................................21

*In re Cincinnati Policing*
    209 F.R.D. 395 (S.D. Ohio 2002)..................................................................26

*In re Dun & Bradstreet Credit Servs. Litig.*
    130 F.R.D. 366 (S.D. Ohio 1990)..................................................................22

*In re General Motors Engine Interchange Litig.*
    594 F.2d 1106 (7th Cir. 1979) ................................................................ 22, 23

*In re Inter-Op Hip Prosthesis Liability Litig.*
    204 F.R.D. 330 (N.D. Ohio 2001)..................................................................22

*In re Ready-Mixed Concrete Antitrust Litig.*
    2007 WL 3334787 (S.D. Ind. Nov. 8, 2007).................................................35

*In re Telectronics Pacing Systems, Inc.*
    137 F.Supp.2d 985 (S.D. Ohio 2001).............................................................22

*Isby v. Bayh*
    75 F.3d 1191 (7th Cir. 1996) ......................................................................21

*Klay v. Humana, Inc.*
    382 F.3d 1241 (11th Cir. 2004) ..................................................................33

*Kleiner v. First National Bank of Atlanta*
    97 F.R.D. 683 (N.D. Ga. 1983) ..................................................................33

*Leonhardt v. ArvinMeritor, Inc.*
    581 F.Supp.2d 818 (E.D. Mich. 2008) ........................................................25

*Mangone v. First USA Bank*
    206 F.R.D. 222 (S.D. Ill. 2001) ..................................................................35

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*
    834 F.2d 677 (7th Cir. 1987) ......................................................................23

*McKinnie v. JP Morgan Chase Bank*
    678 F.Supp.2d 806 (E.D. Wis. 2009) ..........................................................24

*Mejdrech v. Met-Coil Sys. Corp.*
    319 F.3d 910 (7th Cir. 2003) ......................................................................34

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*
    234 F.R.D. 627 (W.D. Ky. 2006) ................................................................21

*Oppenlander v. Standard Oil Co.*
    64 F.R.D. 597 (D. Colo. 1974) ..................................................................26

*Patterson v. Stovall*
    528 F.2d 108 (7th Cir. 1976) ......................................................................23

*Putnam v. Davies*
    169 F.R.D. 89 (S.D. Ohio 1996)..................................................................30

*Silber v. Mabon*
    18 F.3d 1449 (9th Cir. 1994) ......................................................................37

*Wess v. Storey*
        2011 WL 1463609 (S.D. Ohio Apr. 14, 2011)............................................21

*Williams v. Quinn*
        748 F.Supp.2d 892 (N.D. Ill. 2010)................................................21


**Rules**

Fed. R. Civ. Proc., 23(a) ............................................................... 29, 30, 31

Fed. R. Civ. Proc., 23(a)(4)............................................................31

Fed. R. Civ. Proc., 23(b)(3) ............................................... 29, 32, 33, 34

Fed. R. Civ. Proc., 23(c) ............................................................35

Fed. R. Civ. Proc., 23(e) ............................................... 20, 35, 36, 37

Fed. R. Civ. Proc., 23(g) ............................................................32


**Treatises**

Manual for Complex Litigation, Fourth, § 1.46 .........................................1

Manual for Complex Litigation, Fourth, § 21.311 ................................36

Manual for Complex Litigation, Fourth, § 21.632 ........................... 21, 28

Newberg on Class Actions, § 11:53 (4th ed.) ..........................................36

Newberg on Class Actions, § 8.32 (4th ed.) ..........................................35

## I.    INTRODUCTION

Plaintiffs Margaret L. Leathermon, Cindy Jones, Terri Cosby, Willa Albus-Skirvin, Richard Albus, Charlotte Hall, and Claudia Spenneberg ("Plaintiffs") respectfully submit this Memorandum of Law in support of their motion for an order preliminarily approving the proposed settlement of this class action against defendants, Grandview Memorial Gardens, Inc., Jimmy W. Simpson, Carriage Funeral Holdings, Inc., formerly known as Carriage Funeral Services of Indiana, Inc., Carriage Cemetery Services, Inc., Carriage Services, Inc., James R. Holt, Madison Funeral Service, Inc., Mainstreet Investments, Inc., and Grandview Memorial Gardens, LLC ("Defendants").

Preliminary approval is warranted when the proposed class action settlement is "within the range of possible approval" so as to provide a "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (citing Manual for Complex Litigation, Fourth, § 1.46 (1977)). Plaintiffs respectfully submit that the proposed settlement is patently within the range of being fair, reasonable, and adequate. The proposed settlement is the product of extensive arms-length negotiations between experienced counsel taking place over 20 months and was agreed upon only after the direct involvement and assistance of Magistrate Judge William G. Hussmann, Jr.

The proposed settlement embodies all of the features of a settlement that is fair, reasonable, adequate, and in the best interests of the members of the settlement class, as it: (i) is the product of arms-length negotiations, with the direct involvement and assistance of a neutral jurist; (ii) was negotiated by experienced class action attorneys; (iii) is subsequent to undertaking sufficient investigation necessary to evaluate the relative strength and value of the class's claims; and, (iv) reflects a reasoned compromise based directly on the relative strength and value of the class's claims, as well as the risks, expense, complexity and likely duration of further litigation.

Plaintiffs' counsel believe that the proposed settlement is fair, reasonable, and adequate, which and represents a significant recovery based on the risks of establishing class certification, liability and damages at trial on the claims as set forth in the first amended complaint. [Arias Decl., ¶¶ 46-47.]    Accordingly, Plaintiffs and their counsel respectfully request that this Court review the parties' Class Action Settlement Agreement (attached to the accompanying declaration of Mike Arias as Exhibit 1), and enter an order:

1.    Granting preliminary approval of the proposed settlement;

2.    Certifying for settlement purposes only the proposed settlement class;

3.    Appointing Plaintiffs Margaret L. Leathermon, Cindy Jones, Terri Cosby, Willa Albus-Skirvin, Richard Albus, Charlotte Hall, and Claudia

Spenneberg as Class Representatives, and their counsel, Arias Ozzello & Gignac LLP and Stoll Keenon Ogden PLLC as Class Counsel;

4.    Directing that notice be given to Class Members as proposed; and,

5.    Setting a hearing date and briefing schedule for final settlement approval, Class Counsel's fee and expense application, and determination of an appropriate enhancement award for the representative plaintiffs.

## II.    SETTLEMENT NEGOTIATIONS

The negotiation of the proposed settlement has been long, hard-fought and often contentious. [Arias Decl., ¶ 20.]    On February 3, 2012, the parties participated in an all-day, in-person mediation before Samuel R. Ardery of Bunger and Robertson. [Arias Decl., ¶ 21.]    The parties were not able to agree on a settlement on that date, but continued to actively engage in settlement discussions – both directly and through Mr. Ardery – throughout February and into March of 2012. [Arias Decl., ¶ 21.]    On March 8, 2012, Defendants submitted a written settlement offer to Plaintiffs. [Arias Decl., ¶ 22.]    Plaintiffs rejected the offer and responded with a written counter-demand on March 26, 2012. [Arias Decl., ¶ 22.]    Additional written offers and demands were exchanged on April 2, 2012, April 8, 2012, April 18, 2012, April 23, 2012, May 1, 2012 and May 6, 2012. [Arias Decl., ¶ 22.]    In addition to these written offers and demands, counsel for Plaintiffs and Defendants actively engaged in numerous settlement discussions – both via

3

telephone and email – during the months of February, March, April, May, June and July of 2012. [Arias Decl. ¶ 22.]

The parties kept Judge William G. Hussmann, Jr. apprised of their ongoing settlement discussions in telephonic status conferences held on February 13, 2012 [Dkt. #393], March 15, 2012 [Dkt. #395], April 6, 2012 [Dkt. #398], April 23, 2012 [Dkt. #400], May 30, 2012 [Dkt. #406], and June 15, 2012 [Dkt. #408]. At the June 15, 2012, telephonic status conference, Judge Hussmann ordered Defendants to respond to Plaintiffs' current settlement proposal on or before June 25, 2012, ordered Plaintiffs to respond to Defendants' counter-proposal on or before July 3, 2012 and set a settlement conference for August 3, 2012. [Dkt. #408.] The parties exchanged their settlement proposals and counter-proposals as ordered by Judge Hussmann and on August 3, 2012 participated in an all-day settlement conference with Judge Hussmann. [Arias Decl., ¶ 23; Dkt. #412.]

As noted in the Court's minute order, Judge Hussmann "conducted some settlement discussions and private caucusing" with the parties during the August 3, 2012 settlement conference. [Dkt. #412.] Although the parties were not able to reach an agreed resolution at the settlement conference, the parties agreed to continue "private caucusing" facilitated by Judge Hussmann until the next telephonic status conference, which was set for August 31, 2012. [Dkt. #412.] Throughout August of 2012, Judge Hussmann engaged in private caucusing with

counsel for Defendants and Plaintiffs in an attempt to reach an agreement on a settlement. [Arias Decl., ¶ 24.]  Thanks to Judge Hussmann's tireless efforts, the parties were able to agree on the broad parameters of a proposed settlement on or about September 5, 2012. [Arias Decl., ¶ 24.]  Although the parties had reached an agreement in principle, numerous issues remained unresolved and continued negotiations – as well as the continued involvement and guidance of Judge Hussmann – were necessary.

From September of 2012 to January of 2013, the parties engaged in numerous discussions and negotiations regarding the method for selecting a neutral expert and the proper protocol for testing the lawn crypt system sections at Grandview Memorial Gardens Cemetery. [Arias Decl., ¶ 25.]  During the October 5, 2012 telephonic status conference, the parties advised Judge Hussmann that they were working on a memorandum of understanding regarding the testing of the lawn crypt system sections of the cemetery. [Dkt. #417.]  On October 15, 2012, Judge Hussmann conducted a further telephonic status conference with the parties. [Dkt. #419.]  At that conference, the parties informed the Court that they had reached an impasse regarding certain provisions of the memorandum of understanding related to the inspection of the lawn crypt system sections of the cemetery.  Judge Hussmann made recommendations to resolve the impasse and ordered the parties to advise the Court by October 19, 2012 whether they would

accept the Court's proposed language. [Dkt. #419.]  On October 23, 2012, Judge Hussmann conducted a telephonic status conference. [Dkt. #421.]  After additional caucusing with the Court, the parties informed the Court that the language in the memorandum of understanding proposed by the Court was acceptable. [Dkt. #421.]  On November 16, 2012, the parties informed the Court that they had completed the memorandum of understanding related to the inspection of the lawn crypt system sections of the cemetery. [Dkt. #422.]   A copy of the memorandum of understanding was provided to the Court for its review. [Arias Decl., ¶ 26; Dkt. #422.]  That memorandum of understanding provided in relevant part that:

- "as part of a settlement and release of Plaintiffs' and the settlement class's claims against the Defendants […], Defendants will pay the costs of an inspection of the lawn crypt systems at Grandview Memorial Gardens Cemetery" [Exhibit 2 to Arias Decl. ("Memorandum of Understanding"), at ¶ 1];

- "[t]he inspection will be performed by an independent cemetery expert agreed upon by counsel for both Plaintiffs and Defendants" [Ex. 2, at ¶ 2]; and,

- "[w]ithin 7 days of the execution of this MOU, counsel for the parties will meet and confer to prepare the language for a Request for Proposal ('RFP') for the inspection to be sent to independent cemetery experts.  If the parties cannot agree on the language for the RFP at the end of 7 days, the parties will submit their desired versions to Judge Hussmann immediately and he will determine the final language of the RFP" [Ex. 2, at ¶ 2].

[Arias Decl., ¶ 26.]

On December 14, 2012, Judge Hussmann held a further telephonic conference with the parties. [Dkt. #424.] At that time, the parties informed the Court that they had reached an impasse regarding the wording of the request for proposal that would be submitted to potential experts for the testing of the lawn crypt system sections of Grandview Memorial Gardens Cemetery. [Arias Decl. ¶ 27.] At the December 14, 2012 conference, Judge Hussmann "conducted additional discussions concerning possible resolution of this matter" and "provided a proposed resolution with respect to a 'Request for Proposal' document." [Dkt. #424.] On December 18, 2012, counsel for Defendants informed Judge Hussmann that the Court's proposed revisions to the request for proposal were acceptable to Defendants. [Arias Decl., ¶ 27.] On December 19, 2012, counsel for Plaintiffs informed Judge Hussmann that the Court's proposed revisions to the request for proposal were acceptable to Plaintiffs. [Arias Decl., ¶ 27.]

In November and December of 2012, counsel for both Plaintiffs and Defendants had been separately conducting research regarding potential independent experts and compiling lists of independent experts to whom the parties would separately send requests for proposals. [Arias Decl., ¶ 28.] During this period, the parties did not exchange any information regarding their research into potential experts and did not exchange the names of the experts to whom requests for proposals would be submitted. [Arias Decl., ¶ 28.] On January 11, 2013,

7

Plaintiffs and Defendants separately sent requests for proposals to the experts that they had selected. [Arias Decl.,¶ 28.]

The deadline for responses to the requests for proposal was January 29, 2013. [Arias Decl., ¶ 29.]   Pursuant to the memorandum of understanding, the parties were required to "meet and confer to select and retain the independent cemetery expert within 14 days of the receipt of the last response to the RFP." [Arias Decl., ¶ 29.]   By January 29, 2013, the parties had received five responses to their requests for proposal. [Arias Decl., ¶ 29.]   On February 4, 2013, counsel for Plaintiffs and Defendants met and conferred regarding the selection of an expert from the responses.  [Arias Decl., ¶ 29.] On February 5, 2013, following an interview by counsel for Plaintiffs and Defendants, the parties selected Chris Carson of Suhor Industries as the independent expert. [Arias Decl. ¶ 29.]   On February 5, 2013, Judge Hussmann conducted a telephonic status conference with the parties. [Dkt. #426.]  The parties informed Judge Hussmann that the request for proposal process had proceeded smoothly and that the parties would likely be selecting a neutral expert for the inspection of the Lawn Crypt Sections located at Grandview Memorial Gardens Cemetery. [Arias Decl., ¶ 29.]  The parties further informed the Court "that the testing required under the proposed agreement to resolve this matter will be completed in approximately 30 days." [Dkt. #426.]

On February 19, 2013, Chris Carson conducted an inspection of the lawn crypt sections located at Grandview Memorial Gardens Cemetery. [Arias Decl., ¶ 30.]  Counsel for both Plaintiffs and Defendants were present at the inspection. [Arias Decl., ¶ 30.]  On February 25, 2013, Chris Carson submitted a certification that the Lawn Crypt Sections located at Grandview Memorial Gardens Cemetery were installed correctly, are functioning properly, and that the drainage systems are working well. [Arias Decl., ¶ 30.]  A copy of this certification is attached as Exhibit K to the Settlement Agreement.

Judge Hussmann ordered the parties "to file their proposed protocol for resolution of any attorneys' fees in this case." [Dkt. #426.]  In his minute order following the February 5, 2013 telephonic status conference, Judge Hussmann noted that "[i]f an agreement cannot be reached, each party should submit their proposed protocol, and Judge Barker will make a determination as to the manner in which to proceed with respect to that issue." [Dkt. #426.]

On February 25, 2013, the parties advised Judge Hussmann that they had agreed on the following protocol for mediating the attorneys' fees with regard to the proposed settlement. [Arias Decl., ¶ 33.]  The proposal, which was approved by Judge Hussmann, provided in relevant part:

> 1.   Plaintiffs' counsel and defense counsel will both submit all their time records in this case to Your Honor.

9

These time records will be redacted only to the extent they reveal information protected by the attorney-client privilege or the work product doctrine.

2.   In addition, plaintiffs' counsel and defense counsel will also exchange the following time records with each other:

    a.    Plaintiffs' counsel will provide defense counsel with their complete time records (redacted for information protected by the attorney-client privilege or the work product doctrine) from the time of their engagement in 2010 through January 2013.

    b.    Defense counsel will provide plaintiffs' counsel with their complete time records (redacted for information protected by the attorney-client privilege or the work product doctrine) from the time of plaintiffs' counsel's engagement in 2010 through January 2013.

    c.    Defense counsel further will provide plaintiffs' counsel with their time records from the time of their engagement in this case in 2007 until the time of plaintiffs' counsel's engagement in 2010.  These time records will be redacted for information protected by the attorney-client privilege or the work product doctrine, as well as to exclude time incurred for work on issues that current plaintiffs' counsel have not had to litigate.  These include: (i) plaintiffs' motion to remand the case to state court; (ii) defendants' cross-claims; (iii) answering the original complaint, which has since been amended; (iv) preparing for and taking the depositions of witnesses; (iv) drafting briefs in opposition to plaintiffs' original class certification motion, which was mooted when original plaintiffs' counsel moved for leave to amend their

complaint; (v) defendants' motion to disqualify original plaintiffs' counsel and the hearing regarding same; (vi) briefing plaintiffs' original motion for leave to amend their complaint, which was mooted when plaintiffs' counsel were disqualified; and (vii) court conferences prior to the time new plaintiffs' counsel were engaged. Defense counsel will provide Your Honor with unredacted time records for this period (but for redactions for information protected by the attorney-client privilege or the work product doctrine) so that he can confirm that only time unrelated to the work new plaintiffs' counsel have had to perform has been redacted. Defense counsel's time records for this period will not redact time spent on activities similar to those plaintiffs' counsel have had to undertake since their engagement, including document review, fact gathering, client meetings to learn about the issues in the case, meetings with experts, reviewing discovery, researching class certification issues, etc. Plaintiffs' agreement to this protocol will not preclude them from later seeking all time records from defense counsel should the parties fail to reach an agreement on attorneys' fees and costs.

3. Plaintiffs' counsel and defense counsel will exchange their time records as reflected above, and will provide time records to Your Honor, within 30 days.

4. No more than 30 days after the exchange of time records, plaintiffs and defendants will engage in an in-person mediation before Your Honor on the attorneys' fees issue.

[Exhibit 3 to Arias Decl.]

11

At the March 19, 2013 telephonic status conference, Judge Hussmann ordered the parties to exchange time records, as provided under their agreed protocol, by April 3, 2013 and set an in-person mediation session for April 30, 2013. [Dkt. #429.]  On April 3, 2013, the parties exchanged their time records and provided un-redacted versions of their time records to Judge Hussmann. [Arias Decl., ¶ 34.]

On April 23, 2013, Plaintiffs' counsel sent an email to Defendants' counsel inquiring about exchanging mediation statements in advance of the forthcoming mediation before Judge Hussmann. [Arias Decl., ¶ 35.]  In that email, Plaintiffs' counsel attached a proposed memorandum of understanding regarding the proposed class action settlement, stating that it "would be useful to have the framework of the settlement set-forth in a memorandum of understanding" before the mediation. [Arias Decl., ¶ 35.]  In that email, Plaintiffs' counsel additionally stated: "We believe that having in place an MOU (which is silent on the fee issue) in advance of the mediation will make our discussions on attorneys' fees more focused and efficient." [Arias Decl., ¶ 35.]  On April 24, 2013, counsel for Defendants responded to Plaintiffs' email, stating, in relevant part, that Defendants "are not in favor of an MOU" because, among other reasons, "the parties' correspondence had already spelled out the parties' agreement in detail." [Arias Decl., ¶ 35.]  Counsel for Plaintiffs responded that in light of previous statements

made by Defendants and the possibility that in fact there were substantive differences regarding the parties' understanding of the settlement, Plaintiffs' counsel would not discuss attorneys' fees until a memorandum of understanding was in place. [Arias Decl., ¶ 35.]  As noted by Judge Hussmann in his minute order following the April 30, 2013 in-person mediation, that mediation was solely focused on the drafting and entering of a memorandum of understanding:

> The parties resolved certain issues arising out of a Memorandum of Understanding and executed an amended rough copy of that Memorandum of Understanding.  The rough copy is to be, in a verbatim manner, reduced to a more final version and executed by the parties again within the next 10 days.  ***Discussions concerning attorney fees are not able to be conducted until the Memorandum of Understanding is completed. The parties are directed to consult with each other on that manner.***

[Dkt. #434 (emphasis added).]

A "cleaned, final" version of the memorandum of understanding that was negotiated and drafted by the parties with the assistance of Judge Hussmann during the April 30, 2013 in-person mediation was exchanged on May 8, 2013. [Arias Decl., ¶ 36.]  By May 13, 2013, the memorandum of understanding was executed by counsel for all parties. [Arias Decl., ¶ 36.]  During the May 13, 2013, telephonic status conference the parties informed Judge Hussmann that the memorandum of understanding is "nearly completely executed." [Dkt. #436.]   Accordingly, the

13

Court set a telephonic status conference for May 30, 2013 to discuss the "attorney fees issue." [Dkt. #436.]

On May 30, 2013 Judge Hussmann conducted a telephonic status conference with the parties. [Dkt. #438.] As noted in the minute order following that status conference, Judge Hussmann "conducted private caucusing with regard to the attorney fees issue." [Dkt. #438.] This was the first time that any substantive discussions concerning attorneys' fees occurred between the parties and with the Court. [Arias Decl., ¶ 37.] On May 30, 2013, Judge Hussmann actively engaged in private caucusing with the parties in an attempt to reach an agreement on the attorneys' fees issue. [Arias Decl., ¶ 37.] Private caucusing continued both via telephone and email with Judge Hussmann throughout the week of June 3 and continuing into the first two weeks of August. [Arias Decl., ¶ 37.]

On August 5, 2013, Judge Hussmann issued a minute order setting a telephonic status conference for August 9, 2013 and advising the parties that:

> The Magistrate Judge plans to require the parties to provide all documents necessary for Judge Barker's approval of any settlement in this case to her prior to 9/1/2013. During the August 9th conference, the parties should be prepared to discuss, in detail, any remaining issues upon which an agreement has not been reached.

[Dkt. #440.]

On August 9, 2013, Judge Hussmann presided over a telephonic status conference with the parties, wherein he "commenced certain private caucusing

14

concerning potential resolution of this claim and continued those discussions during the week of August 12, 2013." [Dkt. #443.]    On August 15, 2013, Plaintiffs' counsel advised Judge Hussmann that they would accept Defendants' offer to pay up to $800,000 in attorneys' fees and costs separate and apart from the recovery already agreed upon for the Settlement Class. [Arias Decl., ¶ 39.]

During the months of May through December 2013, the parties actively engaged in the process of drafting the settlement agreement, the class notice and claim forms, the form of summary notice and publication notice, and the proposed order of preliminary approval and the proposed order of final approval. [Arias Decl., ¶ 40.]    Drafts were exchanged between counsel for Defendants and Plaintiffs' on May 24, 2013, June 6, 2013, June 14, 2013, July 8, 2013, August 7, 2013, August 20, 2013, August 28, 2013, October 17, 2013, October 30, 2013, November 12, 2013, and December 23, 2013. [Arias Decl., ¶ 40.]

A final dispute requiring the guidance of Judge Hussmann arose between the parties in the latter part of August 2013.  Specifically, the parties disagreed as to whether members of Sub-Classes Two and Four should be provided the option to opt out of the settlement.   The issue was raised with Judge Hussmann on September 6, 2013. [Dkt. #447.]  Pursuant to Judge Hussmann's order, the parties submitted letter briefs setting forth their respective positions on September 20, 2013. [Arias Decl., ¶ 41; Dkt. #447.]  On September 30, 2013, Judge Hussmann

provided the parties with his analysis and recommendation on the issue. [Arias Decl., ¶ 41; Exhibit 4 to Arias Decl.]    Judge Hussmann recommended that members of Sub-Class Two should be provided with the right to opt-out. [Ex. 4.] After receiving Judge Hussmann's recommendation and analysis, Defendants agreed that the settlement should provide all members of the settlement class with the option to opt out. [Arias Decl.,¶ 41.]    Having resolved this final impasse, the parties were able to finish drafting all of the settlement documents.

## III.    THE PROPOSED SETTLEMENT

The proposed settlement will resolve the claims of a settlement class comprised of members of the following four sub-classes:

- Settlement Sub-Class One:  All personal representatives and/or individuals vested with the right, pursuant to Indiana common law or statutory law, to control the disposition of the remains of decedents who were interred in lawn crypts[1] *outside* of any Lawn Crypt Section at Grandview Memorial Gardens Cemetery, or any other party seeking relief in connection with the disposition of those remains.  For purposes of this Agreement, a "Lawn Crypt Section" is an area of Grandview Memorial Gardens Cemetery in which drainage pipes and tile have been installed below pre-installed lawn crypts;

- Settlement Sub-Class Two:  All personal representatives and/or individuals vested with the right, pursuant to Indiana common law or statutory law, to control the disposition of the remains of

---

[1]    For the Court's reference, a lawn crypt is a concrete burial container, in which the casket is placed at the time of death.  A lawn crypt section is an area of the cemetery where numerous lawn crypts are preset at one time on top of a pre-installed drainage system.

decedents who were interred in lawn crypts *within* a Lawn Crypt Section at Grandview Memorial Gardens Cemetery, or any other party seeking relief in connection with the disposition of those remains;

- <u>Settlement Sub-Class Three</u>: All persons, and/or their authorized representatives or agents, who entered into agreements with any Defendant for the purchase of a lawn crypt and a burial space at Grandview Memorial Gardens Cemetery in which the lawn crypt has been preinstalled *outside* of any Lawn Crypt Section at Grandview Memorial Gardens Cemetery and who have not yet been interred in such a lawn crypt; and

- <u>Settlement Sub-Class Four</u>: All persons, and/or their authorized representatives or agents, who entered into agreements with any Defendant for the purchase of a lawn crypt and a burial space at Grandview Memorial Gardens Cemetery which is *within* a Lawn Crypt Section at Grandview Memorial Gardens Cemetery and who have not yet been interred in such a lawn crypt.

[Ex. 1 ("Settlement Agreement"), at ¶ 1.]

Under the settlement, Defendants will provide members of Sub-Class One with the option of either: (i) in-kind relief for the reburial of the decedent, consisting of a Standard Air Seal Vantage vault, or its reasonable equivalent, and the funeral services necessary for disinterment and re-interment; or (ii) monetary relief of $1,300 for each decedent on whose behalf a valid claim is timely filed. [Ex. 1 ("Settlement Agreement"), at ¶ 17(d).] Defendants have agreed to provide members of Sub-Class Three with the right to receive a Standard Air Seal Vantage vault or its reasonable equivalent (with an approximate retail value of $895) and the cost of removal and disposal of the already-installed lawn crypt. [Ex. 1, at ¶

17(f).]  Defendants are providing members of Sub-Classes Two and Four with an inspection of the Lawn Crypt Sections at Grandview Memorial Gardens Cemetery by an independent cemetery expert, paid for entirely by the Defendants. [Ex. 1, at ¶ 17(e).]  Finally, Defendants have agreed to reimburse certain costs incurred by any member of the settlement class for merchandise and funeral services that were incurred by the class member pursuant to the disinterment or reinterment of a loved one at Grandview Memorial Gardens Cemetery because of alleged water problems at the cemetery. [Ex. 1, at ¶ 17(g).]

In addition to the direct class member benefits delineated above, pursuant to the settlement agreement Defendants have agreed to pay the costs of class notice and costs of settlement administration [Ex. 1 ("Settlement Agreement"), at ¶ 7], class counsel fees and class costs awarded by the Court up to $800,000 combined [Ex. 1, at ¶ 17(c)], and any named plaintiffs enhancements awarded by the Court [Ex. 1, at ¶ 17(b)].

As further explained below, given the risk, uncertainty, expense and delay of continued litigation through trial and appeal, the proposed settlement is a good result which provides very real and tangible benefits to the class.

## IV.    PLAN FOR CLASS NOTICE

All class members who can be identified with reasonable effort will be sent, within 30 days of the entry of Preliminary Approval, direct, written notice of the

proposed settlement via first-class U.S. mail. [Ex. 1 ("Settlement Agreement"), at ¶ 6(a)(i).]  The identities of the members of Sub-Classes Three and Four and the decedents at issue with respect to Sub-Classes One and Two will be provided to the claims administrator by class counsel, who have obtained the necessary information from Defendants' records. [Ex. 1, at ¶ 6(a)(ii).]  Before mailing notice, the claims administrator will take the information provided by class counsel and apply pre-scrubbing and basic skip tracing to determine the identity and updated addresses for the identified class members. [Ex. 1, at ¶ 6(a)(iii).]  In addition, the claims administrator will search the Lexis-Nexis death database for the names and addresses of any first-degree relatives of the decedents in Sub-Classes One and Two. [Ex. 1, at ¶ 6(a)(iii).]  The claims administrator will then mail notice of the proposed settlement to the Settlement Class in Sub-Classes Three and Four, the updated last known addresses of the decedents at issue in Sub-Classes One and Two, and any first-degree relatives of the decedents in Sub-Classes One and Two identified through a search of the Lexis-Nexis death database. [Ex. 1, at ¶ 6(a)(iii).]

In addition to direct mail notice, notice of the proposed settlement will also be provided by: (i) posting placards at the entrance, exit and outside the cemetery office at Grandview Memorial Gardens Cemetery [Ex. 1 ("Settlement Agreement"), at ¶ 6(b)]; (ii) publishing summary notice in the Louisville Courier – Journal and the Madison Courier for three consecutive weekend editions [Ex. 1, at

¶ 6(c)]; (iii) publishing the class notices on a website created and maintained by the claims administrator [Ex. 1, at ¶ 6(d)]; (iv) placing an out-bound telephone call to any member of Settlement Sub-Class Three whose mailing was returned unclaimed [Ex. 1, at ¶ 6(e)]; (v) establishing an in-bound toll-free number, which will allow class members to place inbound calls to ask about their claims [Ex. 1, at ¶ 6(f)]; and, (vi) broadcasting a public service announcement at a time selected by class counsel [Ex. 1, at ¶ 6(g)].

## V.     THE SETTLEMENT OF THIS ACTION IS IN THE BEST INTEREST OF THE CLASS AND SHOULD BE PRELIMINARILY APPROVED

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action.  Approval of a settlement "is the first step in a two-step process to determine whether a proposed Rule 23 settlement is fair, adequate, reasonable, and not a product of collusion." *Butler v. Am. Cable & Tel., LLC*, No. 09-5336, 2011 WL 4729789, at *9 (N.D. Ill. Oct. 6, 2011).  As the Seventh Circuit has explained:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."  This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing.  Class members are notified of the proposed

> settlement and of the fairness hearing at which they and
> all interested parties have an opportunity to be heard.

*Armstrong v. Bd. of Sch. Dirs. Of Milwaukee*, 616 F.2d 305, 314 (7th Cir.1980),

overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see*

*also* Manual for Complex Litigation, Fourth, § 21.632  (noting that at preliminary

approval stage, the first task before the court is to make a preliminary

determination as to the fairness, reasonableness, and adequacy of the settlement

terms).

Settlements of complex class actions before trial are strongly favored. *Isby v.*

*Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Air Line Stewards & Stewardesses Ass'n*

*v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1169 (7th Cir. 1980); *Williams v.*

*Quinn*, 748 F.Supp.2d 892, 897 (N.D. Ill. 2010); *Wess v. Storey*, No. 08-623, 2011

WL 1463609, at *1 (S.D. Ohio Apr. 14, 2011) ("This Court recognizes that

settlement of class actions is generally favored and encouraged.") citing *Franks v.*

*Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *New England Health Care*

*Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky.

2006) ("'there is a strong public interest in encouraging settlement of complex

litigation and class action suits because they are "notoriously difficult and

unpredictable" and settlement conserves judicial resources'"), quoting *In re*

*Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

At the preliminary approval stage, a court must determine whether a proposed settlement is "within the range of possible approval" and whether notice should be sent to class members and a hearing scheduled to consider final approval of the settlement. See *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982) (citations omitted). The settlement should be preliminarily approved if "the proposed settlement is within the range of possible approval." *In re General Motors Engine Interchange Litig.*, 594 F.2d 1106, 1133 (7th Cir. 1979). Thus, at this stage, the question before the Court is not whether the settlement is fair, reasonable, and adequate, but whether the settlement is within the range of possible approval.

Generally, a court "bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 985, 1026 (S.D. Ohio 2001), citing *In re Dun & Bradstreet Credit Servs. Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990). "A preliminary fairness assessment is not to be turned into a trial or rehearsal for trial on the merits, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001).

The management of a class action rests largely within the district court's discretion. *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987).  It is therefore within this Court's discretion whether, and to what extent, it should conduct a hearing before preliminary approval. *Id.* at 684.  As held in *Mars Steel*, an evidentiary hearing plainly is not required. *See also Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976) (no error in district court's failure to hold evidentiary hearing either before preliminary approval or final approval); *In re General Motors*, 594 F.2d at 1133 (same).  Given the substantial payment Defendants have agreed to make in order to settle the claims of the Plaintiffs and the Settlement Class, Plaintiffs believe that it would be appropriate to proceed with preliminary approval without a hearing.

As this Court has recognized, the "bar is low" when considering a settlement for preliminary approval. *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001).  There can be little question that the proposed settlement in this action is well within the range of possible approval and that probable cause exists to certify the Settlement Class and issue notice of a final fairness hearing.

The proposed settlement was negotiated at arm's length by counsel who are fully versed in class litigation and falls well within the range of settlements that warrant preliminary approval. The settlement represents a significant recovery for the Settlement Class.  Although Plaintiffs believe in the merits of their case, they

recognize that they would face substantial obstacles in establishing liability and damages should this case proceed to trial. Furthermore, even if this case were to proceed to trial, Defendants could appeal any favorable judgment, putting at risk, or otherwise delaying, any recovery to the Settlement Class.

Accordingly, the proposed settlement should be preliminarily approved.

### A. The Settlement Agreement Is the Product of Arms-Length, Non-Collusive Negotiations.

"A settlement voluntarily negotiated at arms-length by sophisticated counsel is presumed to be fair and reasonable." *Best Foods v. Aerojet-General Corp.*, Nos. 89-503 and 89-961, 2000 WL 1238910, at *9 (W.D. Mich. Aug. 24, 2000). Here, the settlement was reached only after intense, hard fought, and arm's-length negotiations. The parties engaged in settlement discussions over the course of over 20 months. [Arias Decl., ¶¶ 20-41.] Indeed, as set forth in detail above, the proposed settlement in this action was only reached because of the direct involvement and guidance of Judge Hussmann. [Arias Decl., ¶¶ 23-41.] This fact, alone, provides sufficient justification for preliminary approval. *See Butler v. Am. Cable & Tel., LLC*, *supra*, 2011 WL 2708399, at *8 (approving settlement where "the parties participated in arm's length negotiations with the assistance of the Court") citing *McKinnie v. JP Morgan Chase Bank*, 678 F.Supp.2d 806, 812 (E.D. Wis. 2009) (noting that arm's length negotiations facilitated by a neutral mediator is one factor, among others, that supports a finding that the settlement is fair)).

24

Both sides zealously pressed their positions throughout the negotiation process, and have continued to do so even through the process of negotiating the language for their formal written agreement. [Arias Decl., ¶¶ 24-41.]

Moreover, the Settlement Agreement does not provide for excessive compensation for the attorneys; rather, the agreement provides that class counsel will recover reasonable attorneys' fees and costs of no more than $800,000 – an amount that is significantly below the lodestar that class counsel have devoted to the prosecution of this litigation. [Ex. 1, ("Settlement"), at ¶ 17(c); Arias Decl., ¶ 39.]

### B.    The Settlement Is Likely to Obtain Final Approval as Being Fair, Adequate, and Reasonable.

"In assessing a class action settlement, the district court is to assess the settlement with regard to a 'range of reasonableness' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818, 831 (E.D. Mich. 2008).   Although Plaintiffs strongly believe that they will prevail at trial and Defendants strongly believe the opposite, all parties recognize that neither side is assured of success. This risk, as well as the prospect of "a long, arduous [trial] requiring great expenditures of time and money on behalf of both the parties and the court," strongly weighs in favor of settlement. *In re Cincinnati Policing*, 209 F.R.D. 395,

400 (S.D. Ohio 2002); *see also Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)("The Court should…compare the significance of immediate recovery to the mere possibility of relief in the future, after protracted and expensive litigation.").

In addition to the inherent risk as to the outcome, litigation of this case would entail delay that would be a detriment to the Settlement Class. The settlement provides a guaranteed recovery. Not only would continuing litigation risk that recovery, it will delay any payment for a considerable amount of time, given that an appeal of any judgment is essentially assured. If approved, members of the Settlement Class will not have to wait; the proposed settlement provides them immediate certainty regarding their recovery.

**C.    The Settlement Does Not Improperly Grant Preferential Treatment to the Class Representatives and Provides for a Fair Allocation of Relief to All Class Members.**

The Settlement Agreement affects similarly situated class members in the same fashion. Although the Defendants have agreed to pay Plaintiffs an enhancement award – separately from any class benefits – if the Court awards one, Defendants have indicated that they will oppose any enhancement award. [Ex. 1, at ¶ 17(b); Arias Decl., ¶ 44.] Plaintiffs intend to seek an enhancement award of $5,000 for each of the representative Plaintiffs. [Arias Decl., ¶ 44.] This enhancement is warranted considering that Plaintiffs spent many hours

participating in the discovery process and assisting their counsel in this litigation.

A reasonable enhancement award, like the one which will be sought here, is

appropriate for the class representatives' efforts in protecting the rights of the class.

*Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("[I]ncentive awards are

usually viewed as extensions of the common-fund doctrine, a doctrine that holds

that a litigant who recovers a common fund for the benefit of persons other than

himself is entitled to recover some of his litigation expenses from the fund as a

whole.").

## VI.    THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED

As set forth in the Stipulation of Settlement Agreement, the parties request

that a Settlement Class consisting of the following four sub-classes of individuals

be provisionally certified for settlement purposes only:

> Settlement Sub-Class One:  All personal representatives
> and/or individuals vested with the right, pursuant to
> Indiana common law or statutory law, to control the
> disposition of the remains of decedents who were
> interred in lawn crypts *outside* of any Lawn Crypt
> Section at Grandview Memorial Gardens Cemetery, or
> any other party seeking relief in connection with the
> disposition of those remains.  For purposes of this
> Agreement, a "Lawn Crypt Section" is an area of
> Grandview Memorial Gardens Cemetery in which
> drainage pipes and tile have been installed below pre-
> installed lawn crypts;

Settlement Sub-Class Two:  All personal representatives and/or individuals vested with the right, pursuant to Indiana common law or statutory law, to control the disposition of the remains of decedents who were interred in lawn crypts *within* a Lawn Crypt Section at Grandview Memorial Gardens Cemetery, or any other party seeking relief in connection with the disposition of those remains;

Settlement Sub-Class Three:  All persons, and/or their authorized representatives or agents, who entered into agreements with any Defendant for the purchase of a lawn crypt and a burial space at Grandview Memorial Gardens Cemetery in which the lawn crypt has been preinstalled *outside* of any Lawn Crypt Section at Grandview Memorial Gardens Cemetery and who have not yet been interred in such a lawn crypt; and

Settlement Sub-Class Four:  All persons, and/or their authorized representatives or agents, who entered into agreements with any Defendant for the purchase of a lawn crypt and a burial space at Grandview Memorial Gardens Cemetery which is *within* a Lawn Crypt Section at Grandview Memorial Gardens Cemetery and who have not yet been interred in such a lawn crypt.

A court may certify a class solely for settlement purposes. *See* Manual for Complex Litigation, Fourth, § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or a settlement class.  All criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes.  In certifying a class for purposes of settlement, courts are afforded broad discretion. *In re American Medical Systems, Inc.*, 75 F.3d 1069,

1079 (6th Cir. 1996). As demonstrated below, the requirements of Rule 23(a) [numerosity, commonality, typicality, and adequacy] and Rule 23(b)(3) [predominance of common questions of fact or law and superiority of the class action as the method of adjudication], are readily satisfied here.

### A.    Numerosity.

The first requirement for maintaining a class action under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict numerical test, "substantial" numbers usually satisfy the numerosity requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). Here, the Settlement Class is composed of *at least* 2,460 class members, comprised as follows:

| Sub-Classes | Approximate Number of Burial Sites |
|---|---|
| Settlement Sub-Class One | 970 |
| Settlement Sub-Class Two | 365 |
| Settlement Sub-Class Three | 350 |
| Settlement Sub-Class Four | 775 |
| **Total:** | **2,460** |

[Arias Decl., ¶ 19.]

Because Sub-Classes One and Two consist of the "personal representatives and/or individuals vested with the right, pursuant to Indiana common law or statutory law, to control the disposition of the remains of decedents," which for many decedents will comprise more than one individual, the total number of class

29

members is likely to be substantially greater than 2,460 – which is merely the approximate number of burial sites.  This number is sufficient to satisfy Rule 23(a)(1). *Daffin,* 458 F.3d at 552 (thousands of members satisfies the numerosity element).

## B.    Commonality.

The second prerequisite to class certification is the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2).  "The interests and claims of the various plaintiffs need not be identical.  Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998.).  Thus, "'the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation.'" *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (quoting *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996).

The overarching and unifying allegations in this action are that Defendants owed their customers a clear duty to provide a dignified and proper burial, including burial in a container that would protect the remains from water, and that Defendants breached these duties by failing to properly install and maintain lawn crypts.

### C.    Typicality.

A claim meets the typicality prerequisite if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re American Medical Systems, Inc.*, 75 F.3d at 1082 (6th Cir. 1996).  If the legal theory under which plaintiffs would proceed is the same, typicality is satisfied even if some factual differences exist. *Daffin, supra,* 458 F.3d at 552-553.

The Plaintiffs' and the Settlement Class's claims all arise from the same course of conduct.  Just like the Settlement Class, Plaintiffs' claims are based on the legal theory of breach of an agreement and duty to perform a proper burial.  Just like the Settlement Class, Plaintiffs' claims are based on Defendants' failure to properly install and maintain lawn crypts within the standards set by the industry.  Where, as here, a plaintiff alleges a common pattern of wrongdoing, and will present the same evidence (based on the same legal theories) to support both his claim and the claims of the settlement class members, the element of typicality has been more than sufficiently demonstrated.

### D.    Adequacy.

The final prerequisite under Rule 23(a) is a finding that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Representative plaintiffs must fairly and adequately represent the interest

31

of the class by meeting two requirements: (1) the representative must have common interests with unnamed members of the class; and, (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *In re American Medical Systems, Inc.*, 75 F.3d at 1083. Here, Plaintiffs have no interests that are antagonistic to, or are in conflict with, other members of the Settlement Class.

Adequacy of representation also depends significantly upon the qualifications and experience of the proposed class's counsel. To achieve adequate representation, the named representative's attorney must be qualified, experienced and generally capable to conduct the litigation. *Cross v. National Trust Life Ins.*, 553 F.2d 1026, 1031 (6th Cir. 1977). Rule 23 was amended in 2003 to include factors for the court to consider in evaluating adequacy of counsel. Fed. R. Civ. P. 23(g)(1)(C)(i).

Named Plaintiffs are represented by experienced class action attorneys, who have both the experience and resources to prosecute this case on behalf of the class. [Arias Decl., ¶¶ 4-14.] Plaintiffs' attorneys have the experience and resources to satisfy the adequate representation prong of Rule 23.

### E.  The Action Meets the Requirements of Rule 23(b)(3).

Under Rule 23(b)(3), a court may certify a class if questions of law or fact predominate over questions affecting individual class members [predominance],

32

and if a class action would be superior in fairness and efficiency to other available adjudication methods [superiority]. Fed. R. Civ. P. 23(b)(3). The requirement that common issues predominate over individual issues assures that judicial economy is served by the certification of a class action. *In re American Medical Systems, Inc.,* 75 F.3d at 1085.

Courts have recognized that breach of contract claims brought based on form contracts "present the classic case for treatment as a class action." *Kleiner v. First National Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983). Indeed, such cases are "routinely certified." *Id.* (citing numerous federal and state court cases).  In *Kleiner*, for example, the court noted that the meaning of contract terms in a form contract "is the predominant issue in the case and is common to all class members." *Id.* at 692.  Furthermore, "[t]hat individual questions may remain after interpretation of the contract – questions of damages or possible defenses to individual claims – would not defeat" class certification. *Id.*; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004); *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.")

Likewise, when a tortfeasor acts in the same, uniform manner with respect to all members of the class, the predominance factor is met.  *See Mejdrech v. Met-*

*Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (class certification appropriate in action where area residents alleged that leaking storage tank contaminated soil and groundwater beneath their homes, inasmuch as questions of whether contamination occurred and whether such contamination reached residents' properties were both straightforward and common to all class members). Here, Defendants acted uniformly with respect to all burials and, according to Plaintiffs, that conduct was uniformly outside the standards of professional conduct for the cemetery industry.

Additionally, a class action is clearly superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all class members would be impracticable. Furthermore, because the damages suffered by individual members of the settlement class may be relatively small, the expenses and burden of individual litigation would make it impossible for all settlement class members to individually redress the harm done to them.

In short, the Settlement Class is suitable for certification, and the Court should certify the Settlement Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval of the settlement.

## VII.  THE PROPOSED FORM AND METHOD OF NOTICE IS THE BEST NOTICE PRACTICABLE AND SHOULD BE APPROVED

Rule 23(e)(1)(B) provides, "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Rule 23(e) requires that notice of a proposed settlement inform class members of the following:  (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and, (4) that any class member may appear and be heard at the fairness hearing. Newberg on Class Actions § 8.32 at 262-268 (4th ed.); *see also In re Ready-Mixed Concrete Antitrust Litig.*, Case No. 05-cv-00979, 2007 WL 3334787, at *2 (S.D. Ind. Nov. 8, 2007) (granting preliminary approval of settlement after finding that "[t]he form and manner of notice proposed in the settlement comply with Rules 23(c) and (e) and the requirements of due process").  Due process does not require that every class member receive actual notice of the settlement. *See Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *Mangone v. First USA Bank*, 206 F.R.D. 222, 231 (S.D. Ill. 2001). As the leading treatise on class actions explains:

> The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. Thus, due process does not require actual notice, but rather a good

35

> faith effort to provide actual notice. Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties.

Newberg on Class Actions § 11:53 (4th ed.).

Ultimately, courts have considerable discretion in approving an appropriate notice plan. *See* Manual for Complex Litigation, Fourth, § 21.311 ("Determination of whether a given notification is reasonable under the circumstances of the case is discretionary").

Here, Plaintiffs request approval of the proposed class notice, which are attached as Exhibits B, C, and D to the Settlement Agreement. The proposed class notice meets all of the requirements of Rule 23(e): it identifies the Plaintiffs and the Defendants, and describes the lawsuit and the settlement classes in a straightforward manner; it succinctly describes the essential terms of the proposed settlement, and identifies all parties against whom claims are being released; it provides information on how to opt out of the Settlement Class and provides all applicable deadlines for such action; and, it informs Settlement Class members that if they do not exclude themselves, and the settlement is approved, they will be bound by the resulting judgment. In short, the proposed notice will provide the necessary information for the Settlement Class to make an informed decision regarding the Settlement.

As a general rule, due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort," *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173, 177 (1974), and "is appropriate, for example, if class members are required to take action – such as filing claims – to participate in the judgment, or if the court orders a settlement opt-out opportunity under Rule 23(e)(3)." Fed. Rules Civ. Proc. R. 23(e)(1) (Committee Note of 2003). Here, the parties have agreed to effect individual notice by first-class mail based on the last known address for each member of the Settlement Class. [Ex. 1 ("Settlement Agreement"), at ¶ 6(a).] Courts have repeatedly held that notice by direct mail is the "best practicable" notice under the circumstances. *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).

Plaintiffs submit that the proposed form and means of effecting notice are adequate and reasonably calculated to provide notice of the settlement to the Settlement Class. Accordingly, the Court should approve the proposed forms and dissemination of notice.

## VIII. THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL

The next steps in the settlement approval process are to notify the class of the proposed settlement, allow Class Members an opportunity to file any objections or opt-outs, and hold a final approval hearing. Toward those ends, the parties propose the following schedule:

37

| Event | Proposed Deadline |
|---|---|
| Deadline to disseminate class notice | 30 days after entry of Preliminary Approval Order |
| Deadline for Class members to opt-out of the settlement | 45 days after dissemination of class notice |
| Deadline for Class members to file objection to the settlement | 45 days after dissemination of class notice |
| Deadline to file final approval and fee application papers | 14 days prior to Final Approval Hearing |
| Final Approval Hearing | <u>June 23 at 10:00 a.m.</u> (about 110 days after entry of Preliminary Approval Order) |

## IX.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed Order Granting Preliminary Approval of Stipulation of Settlement, certifying the settlement class, appointing Plaintiffs as the Class Representatives and their attorneys as Class Counsel, directing dissemination of class notice, and setting a hearing for the purpose of deciding whether to grant final approval.

Dated:  February 18, 2014        /s/ Mike Arias
                                 Mike Arias, Esq. (Admitted *Pro Hac Vice*)
                                  (marias@aogllp.com)
                                 **Arias Ozzello & Gignac LLP**
                                 6701 Center Drive West, 14th Floor
                                 Los Angeles, California 90045
                                 Phone: (310) 670-1600 / Fax: (310) 670-1231

and

Douglas C. Ballantine
  (douglas.ballantine@skofirm.com)
Justin D. Clark (Admitted *Pro Hac Vice*)
  (justin.clark@skofirm.com)
Christopher E. Schaefer (Admitted *Pro Hac Vice*)
  (christopher.schaefer@skofirm.com)
**Stoll Keenon Ogden PLLC**
2000 PNC Plaza
500 West Jefferson Street
Louisville, Kentucky 40202
Phone: (502) 333-6000 / Fax: (502) 333-6099

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2014, I electronically filed the

foregoing document(s) described as:

PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

with the clerk of the Court for the United States District Court for the Southern

District of Indiana by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the CM/ECF system as follows:

Scott Christopher Holbrook
BAKER & HOSTETLER LLP
3200 National City Center
1900 East 9th Street
Cleveland, OH 44114

James W. Riley, Jr.
RILEY BENNETT & EGLOFF LLP
141 East Washington Street, Suite 400
Indianapolis, IN 46204
*Counsel for Defendants,*
*Grandview Memorial Gardens, Inc.,*
*Carriage Cemetery Services, Inc.,*
*Carriage Funeral Holdings, Inc., and*
*Carriage Services, Inc.*

John Francis Carroll
Frederick Reinecke
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

40

9300 Shelbyville Road, Suite 400
Louisville, KY  40222
*Counsel for Defendant,*
*Jimmy W. Simpson*


William H. Mullis
112 South Seventh Street
P. O. Box 35
Mitchell, IN  47446
*Counsel for Defendants,*
*James R. Holt, Madison Funeral Service, Inc.,*
*and Mainstreet Investments, Inc.*


Mary F. Schmid
251 East Ohio Street, Suite 1100
Indianapolis, IN  46204
*Counsel for Defendant,*
*Grandview Memorial Gardens, LLC*



Dated:  February 18, 2014 _____/s/ Mike Arias_____

Mike Arias, Esq. (Admitted *Pro Hac Vice*)
(marias@aogllp.com)